The Chicago, Milwaukee and St. Paul Railway Company, Appellant, vs. The State Public Utilities Commission of Illinois, Appellee.

*Opinion filed April 22, 1915.*

1. Railroads—*when relief granted to shipper is within scope of complaint.* Where a shipper complains to the Public Utilities Commission that the rate charged by a railroad for transporting cars of coal and manure from connecting lines to the shipper's place of business is unreasonable and excessive and there is a prayer for general relief, the commission may determine that such rate is unreasonable and excessive even though there is a specific prayer in the complaint that the commission establish a through rate from the mines, which the commission declines to do.

2. Same—*what is not interference with inter-State commerce.* The State Public Utilities Commission has power, on complaint being made, to fix a reasonable rate for hauling coal and manure in car-load lots to a point within this State from the junction point within this State at which such cars are received from the forwarding carriers, even though some cars may come from points outside the State, where neither the complaint nor the order of the commission purports to relate to inter-State shipments but only to shipments originating in this State.

3. Same—*when Congress may determine what rate shall be applied.* If by reason of the interblending of the inter-State and intra-State operations of inter-State carriers adequate regulation of inter-State rates cannot be maintained without affecting intra-State rates, Congress is entitled to determine what regulation shall be applied.

4. Same—*limits of power of courts to review order fixing rates.* The power to fix rates for transportation is legislative, whether exercised directly by the legislature or by an administrative board under delegated authority, and the power of the courts to review the conclusion of the legislature or administrative board is limited to determining whether the board has acted within the scope of its authority, or the order is without foundation in the evidence, or a constitutional right of the carrier has been infringed by fixing rates which are confiscatory or insufficient to pay the cost of traffic and return a reasonable profit to the carrier on the investment.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

268 — 4

O. W. Dynes, C. S. Jefferson, and S. D. Scholes, (Burton Hanson, of counsel,) for appellant.

Everett Jennings, and Timothy F. Mullen, for appellee.

M. F. Gallagher, and E. M. Wilkinson, for the Poehlmann Bros. Company.

Mr. Chief Justice Cartwright delivered the opinion of the court:

The appellant, the Chicago, Milwaukee and St. Paul Railway Company, charges the Poehlmann Bros. Company, a corporation owning and operating two greenhouses at Morton Grove, a village about three miles from the corporate limits of Chicago, forty cents a ton on car-load shipments of coal and forty cents a ton on car-load shipments of manure from Galewood to Morton Grove, a distance of eleven and a half miles. The Poehlmann Bros. Company filed a complaint with the Railroad and Warehouse Commission, of which the appellee, the State Public Utilities Commission, is the successor, alleging that it was in the business of growing flowers and selling them in Chicago and Morton Grove; that it consumed in the operation of its business about 28,000 tons of bituminous coal per year, a large portion of which was shipped from points in this State, and used about 700 cars of manure each year; that Galewood is a station on the appellant's railroad, and that it made the charges stated from its station of Galewood, where it received cars from other common carriers, to Morton Grove. The complainant alleged that the charge was unjust, unreasonable and excessive and was discriminatory in relation to charges made for similar service to competitors of the complainant requiring substantially the same service at other points near Chicago, and prayed for an order of the commission ascertaining and determining rea-

sonable and lawful through rates and charges for transportation of coal from the mines in this State and ordering the appellant to conform thereto, and for such other and further order as the commission might deem just and reasonable in the premises. The appellant filed an answer, denying that the charge of forty cents per net ton for transporting coal, manure and other materials from Galewood to Morton Grove was unjust, unreasonable, excessive or discriminatory. After a hearing of the parties and a consideration of the evidence produced, the commission made an order reciting that complainant had asked for the establishment of through rates but the only rate attacked was the charge from Galewood to Morton Grove, and the commission did not feel it necessary to enter, or that it would be justified in entering, into the question of through rates or discrimination, believing that the matter could be properly disposed of without entering into those questions. It was ordered that the charge of forty cents per net ton was unreasonable, and that the rate should be reduced and the charges should not exceed twenty cents per ton on coal and twenty-five cents per ton on manure from Galewood to Morton Grove. The appellant removed the case by appeal to the circuit court of Sangamon county, where the order was affirmed, and a further appeal was prosecuted to this court.

The first proposition of counsel for the appellant is, that so far as the rate on coal was concerned the order was outside the scope of the prayer of the complainant, which asked the commission to establish through rates on coal from the mines in Illinois to complainant's plant at Morton Grove and to establish a reasonable rate for moving manure from Galewood Station to Morton Grove, and the commission did not establish any through rate on coal, but, ignoring the prayer, merely fixed a local rate. There was a prayer for specific relief by the establishment of through rates from the mines to Morton Grove, but the

reasonableness of the rate from Galewood to Morton Grove was directly attacked in the complaint as being unjust, unreasonable and excessive, and there was no other fact alleged calling for relief. There was a general prayer for such other and further order as the commission might deem just and reasonable in the premises, and what the commission was asked or authorized to do depended rather upon the facts alleged than upon the form of the prayer. The appellant appeared and defended before the commission, and the only controversy was whether the rate from Galewood to Morton Grove was unreasonable, excessive or discriminatory as between the complainant and its competitors. The commission found that it was not necessary to enter into the question of discrimination or to establish through rates, and the general prayer based upon the facts alleged was sufficient to authorize the relief granted.

The next proposition of counsel is, that the order discriminates against and places a burden upon inter-State commerce, in violation of the commerce clause of the Federal constitution, and is therefore unreasonable, unlawful and void. Neither the complaint nor the order in any way related to or affected inter-State commerce. The complaint was confined to charges on coal shipped to the complainant from points in this State, the recitals of the order related only to such shipments, and the order did not purport to fix a rate on any inter-State shipment. The argument is, that because a car of coal coming to Galewood from another State would be hauled over the same track by the appellant to Morton Grove and the appellant could not discriminate and charge more for hauling that car than for a car coming from a mine in this State, the commission has discriminated against inter-State commerce and placed an unlawful burden upon it,—which is saying that the State has no concern with or control over rates for transportation which is purely local within its borders if the carrier performs similar service in inter-State commerce. We do not

understand that to be the law, or that any doubt has ever been entertained of the authority of the State to regulate rates for transportation that is wholly within the State, although the authority of the State does not extend to the regulation of charges for inter-State transportation or to discrimination against inter-State commerce. *Wabash, St. Louis and Pacific Railway Co.* v. *Illinois,* 118 U. S. 557.

In the case of *Simpson* v. *Shepherd,* 230 U. S. 352, (known as the "Minnesota rate cases,") the court entered into an exhaustive discussion of the relative jurisdiction of the State and national governments over the subject of transportation, intra-State and inter-State, with a complete review of the authorities, and again affirmed the doctrine that the power of the Federal government to regulate transportation is limited to inter-State commerce, and the authority of the States to regulate transportation which begins and ends within their borders has been in nowise restricted by the Federal act. The court said that the doctrine was fully established by its decisions that the State could not prescribe inter-State rates but could fix reasonable intra-State rates throughout its territory, and that the decisions recognizing and defining the State power wholly refuted the contention that the making of such rates either places a direct burden upon inter-State commerce or is repugnant to the Federal constitution. The court said: "Congress did not undertake to say that the intra-State rates of inter-State carriers should be reasonable or to invest its administrative agency with authority to determine their reasonableness. Neither by the original act nor by its amendment did Congress seek to establish a unified control over inter-State and intra-State rates. It did not set up a standard for intra-State rates, or prescribe, or authorize the commission to prescribe, either maximum or minimum rates for intra-State traffic. It cannot be supposed that Congress sought to accomplish by indirection that which it expressly disclaimed, or attempted to override

the accustomed authority of the States without the provision of a substitute. On the contrary, the fixing of reasonable rates for intra-State transportation was left where it had been found,—that is, with the States and the agencies created by the States to deal with that subject.—*Missouri Pacific Railway Co.* v. *Larabee Mills,* 211 U. S. 612, 620, 621."

If counsel for appellant are right in their claim that the order was void because a car of coal or of manure might come over its road from another State, the State would have no power in any case to regulate transportation wholly within its boundaries, as there is no railroad where such a condition does not exist. No such doctrine has been declared or endorsed in any case to which counsel have referred. It is true that if, by reason of the interblending of the inter-State and intra-State operations of inter-State carriers, adequate regulation of inter-State rates cannot be maintained without affecting intra-State rates, Congress is entitled to determine what regulation shall be applied. Such a situation was suggested in *Simpson* v. *Shepherd, supra,* and was brought before the court in *Houston East and West Texas Railway Co.* v. *United States,* 234 U. S. 342. In that case the railroad companies had made rates discriminating in favor of traffic within the State of Texas and against similar traffic between Louisiana and Texas. The Inter-State Commerce Commission had found the inter-State rates to be unreasonable and had established rates substantially the same as those charged by the carriers for transportation for similar distances in Texas. The commerce court dismissed the petitions of the railroad companies to set aside the order, and the Supreme Court affirmed the decree, holding that Congress has the power to prevent the common instrumentalities of inter-State and intra-State commercial intercourse from being used in their intra-State operations, to the injury of inter-State commerce. That principle has no possible application to this

case upon the argument of counsel that the rate from Gale-wood to Morton' Grove must in all cases be the same, so that a lower rate will not be charged on intra-State commerce than is charged for inter-State commerce. There is in the order no feature of discrimination against inter-State commerce.

In *Mulberry Hill Coal Co.* v. *Illinois Central Railroad Co.* 257 Ill. 80, the coal company brought the suit for damages for failure to comply with the statute requiring the railroad company to furnish cars within a reasonable time for the transportation of coal. It was agreed at the trial that part of the coal would have been shipped out of the State and part would have been consigned locally to points within the State. The railroad company claimed that the act was void because repugnant to the commerce clause of the constitution, and moved the court, at the close of all the evidence, to dismiss the suit. Whether the court erred in refusing to dismiss the suit on the ground that the State had lost all right to require the performance of any duty in intra-State commerce because the railroad company had extended its line beyond the limits of the State was the only question involved in the appeal. Our opinion was that the laws of the State governing the duties of railroad companies to furnish cars for transportation of property within the State were not abrogated by an extension of the railroad beyond the limits of the State and the Federal control over the inter-State commerce carried on over the road. If all power was not so abrogated then the act was not void, and the only question concerning inter-State commerce related to the measure of damages. A recovery could only have been had for a failure to furnish cars for intra-State transportation and no damages could be included for a failure to furnish cars for inter-State transportation, but the question of the measure of damages was not raised, and the only question presented or argued was whether the

State had lost all control over common carriers who did both an intra-State and inter-State business.

Counsel for appellant say that the same complaint was made by the Poehlmann Bros. Company to the Inter-State Commerce Commission, which upheld the forty cent rate and dismissed the complaint, and a copy of the opinion of that commission is included in the argument. Counsel are evidently mistaken. The Poehlmann Bros. Company represented to the Inter-State Commerce Commission that a part of the coal used by it came from West Virginia and other sections outside of this State and complained that the local rate of forty cents from Galewood to Morton Grove was unreasonable. The appellant was the only party defendant, and the commission said that the comparisons made by the complainant were in respect to through rates; that the traffic in question was through traffic although the rate between Galewood and Morton Grove was separately established, and that such a rate could not be considered apart from its relationship to the through rate from inter-State points of origin. Neither the through rate nor the carriers responsible for it were before the commission, and therefore it declined to express any opinion upon the reasonableness of the rate and did not uphold it or decide anything about it.

It is contended that the order is void because of a failure to give notice to appellant, since the only notice received was that there would be a hearing on the complaint which prayed for the establishment of through rates. The appellant appeared at the hearing and offered such evidence as it chose in support of its answer and against the allegation that the rate was unreasonable, and, as we have already said, the prayer was not limited to the fixing of through rates.

It is next urged that the order is void because in conflict with the act forbidding the commission to enter an order giving one carrier an unfair or unequal advantage

over another.   The evidence does not tend to show that any advantage was given.   Counsel also say that the evidence did not show any discrimination in rates against the petitioner, but that question was not decided by the commission.   In the order the commission expressly refused to enter upon that question and merely decided that the rate was unreasonable.

Finally, it is contended that the conclusion of the commission that the rate was unreasonable was not justified by the evidence.   The power to fix rates is legislative, whether exercised by the legislature directly or by an administrative body under delegated authority.   The fixing of rates is not a judicial function, and the right to review the conclusion of the legislature or an administrative body is limited to determining whether the board acted within the scope of its authority or the order is without foundation in the evidence, or a constitutional right of the carrier has been infringed upon by fixing rates which are confiscatory or insufficient to pay the cost of the traffic and return to the carrier a reasonable profit on the investment.   (*Inter-State Commerce Commission* v. *Illinois Central Railroad Co.* 215 U. S. 452; *Inter-State Commerce Commission* v. *Chicago, Rock Island and Pacific Railway Co.* 218 id. 88.)   In this case the commission acted within the scope of its authority, and the evidence shows that the rate was out of proportion to the rates fixed by the appellant over the same line to Milwaukee,—a distance seven times as great as from Galewood to Morton Grove.   The order had a substantial basis in the evidence, and there is no ground upon which the court could interfere with the judgment of the commission.

The judgment is affirmed.          *Judgment affirmed.*