(No. 19737.—

THE INDIANA HARBOR BELT RAILROAD COMPANY *et al.* Appellees, *vs.* THE COMMERCE COMMISSION *ex rel.* The National Stone Company *et al.* Appellants.

*Opinion filed June 20, 1930—Rehearing denied October 10, 1930.*

BARR & BARR, for appellants.

NELSON J. WILCOX, HARRY I. ALLEN, and ADOLPH J. RADOSTA, JR., for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

This is an appeal from an order of the circuit court of Cook county setting aside an order of the Commerce Commission establishing intrastate rates on crushed stone from Joliet into the Chicago switching district.

Appellants, the National Stone Company, the Lincoln Stone Company and the Markgraf Stone Company, filed a joint complaint with the Illinois Commerce Commission against appellees and the Chicago and Alton Railroad Company. The Chicago and Alton Railroad Company did not appeal from the order of the Commerce Commission. The complaint alleged that the appellants were engaged in the crushed stone business at Joliet, Illinois; that appellees were common carriers engaged in the transportation of property between points wholly within the State of Illinois; that the freight rates on crushed stone from Joliet into the Chicago switching district were sixty-five cents per ton for single-line hauls and eighty-five cents per ton for joint hauls; that said rates were unjust and unreasonable, unduly prejudicial to complainants, and unduly preferential to shippers of crushed stone and like materials within the Chicago switching district; that the rate on such material within the Chicago district was, as a general rule, fifty cents per ton for single or joint deliveries involving two lines, and that there were some forty cent single rates. Most of the defendants answered denying that complainants were entitled to relief. The Elgin, Joliet and Eastern Railway Company in its answer admitted that the difference between a sixty-five cent rate and a fifty cent rate was unjust and suggested that a difference of five cents per ton would be just and reasonable. Upon a hearing the commission entered an order establishing a rate of fifty-five cents per ton for single-line hauls from the plants of complainants to points in the Chicago switching district; also a rate for two and three-line hauls five cents per ton higher than the rates for two or three-line hauls concurrently maintained for transportation of crushed stone between points in the Chicago switching district. Appellees appealed to the circuit court of Cook county, where the order of the Commerce Commission was set aside, whereupon an appeal was taken to this court.

It is contended by appellants that the circuit court misconceived its power in reversing the decision of the Commerce Commission; that the commission in entering its order was acting within its statutory jurisdiction; that the evidence furnished a sufficient foundation for the order; that the order was not arbitrary or unreasonable; that it did not infringe any constitutional right and was not in clear violation of the law. Appellees, in stating their position, say: "The most important question in this case is whether or not there is substantial evidence to support the order of the commission."

The power to fix rates is legislative, whether exercised by the legislature directly or by an administrative body under delegated authority. The fixing of rates is not a judicial function, and the right to review the conclusion of the legislature or an administrative body is limited to determining whether the board acted within the scope of its authority, or the order is without foundation in the evidence, or a constitutional right of the carrier has been infringed upon by fixing rates which are confiscatory or insufficient to pay the cost of the traffic and return to the carrier a reasonable profit on the investment. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 Ill. 49; *Public Utilities Com.* v. *Terminal Railroad Ass'n,* 281 id. 181.) "Courts should review or interfere with such orders only so far as necessary to keep them within the jurisdiction of the commission and to protect constitutional rights. The Public Utilities act does not contemplate and the law does not authorize a court to put itself in the place of the commission and try a question presented to the commission a second time and thereafter substitute its own judgment for that of the commission. No court should attempt to usurp legislative or administrative functions by setting aside a legislative or administrative order on its own conception of the wisdom of it. The orders and decisions of the commission are subject to review as to the reasonableness of the

commission's conclusion, and an unreasonable order is unlawful. However, where there is substantial evidence to warrant it, an order of the commission should be sustained." *Commerce Com.* v. *Omphghent Township,* 326 Ill. 65.

It would not serve any useful purpose to discuss the evidence in detail. The evidence covers many questions which have a bearing upon the final decision as to the rates. For example, the witness Bond, called and examined on behalf of the defendants, testified that he was traffic manager of the Elgin, Joliet and Eastern Railway Company; that he represented specifically the Chicago and Alton, Rock Island and Elgin, Joliet and Eastern railways; that in a general way he was speaking for all of the defendants; that he knew what their views were; that the rates in the Chicago district were fifty cents, and some lower than that; that the rate from Joliet, single line, is sixty-five cents; that it had been found from experience that the difference of fifteen cents has the effect of curtailing, if not almost stopping, the movement of gravel and stone from Joliet into the Chicago district; that he believed that a spread of five cents per ton between the Joliet quarries and the quarries in the Chicago district would enable the Joliet producers to continue to do business; that because of this belief his companies had offered to establish a rate of fifty-five cents per ton from Joliet to the Chicago district; that the traffic on his lines was entirely interstate; that he believed that a five-cent spread would permit them to do business; that the reason he set on a five cent differential was because, after careful consideration at the time the whole basis was established, the five cent differential was the one that was thought proper as between the rates in the district and the rates from the first zone outside; that he did not believe there was any necessity of defending a sixty-five cent single rate or an eighty-five cent joint rate; that he believed that the fifty-five cent rate was honestly justified; that the railroads met in conference and agreed that they would accept

a five cent spread; that the five cent spread was arrived at as a matter of judgment as to what the traffic would bear; that he was of the opinion, under existing conditions, that a fifty cent rate would earn a fair return on their investment. Another witness on behalf of defendants testified that he was freight manager for the Chicago and Alton, located at Chicago. He confirmed and corroborated the testimony of Bond.

The record shows that while in-bound shipments into the Chicago district by Joliet shippers are required to pay a higher rate, yet out-bound shipments from the Chicago district have the same rates to points south of Joliet as does Joliet.

It is contended by appellees that the rate was fixed by the commission for the sole purpose of enabling shippers to meet commercial competition and that the commission has no authority to fix a rate for such purpose. As a legal proposition their contention is correct. The record, however, does not sustain this contention. The question of commercial competition was only one of the many elements entering into the complex question before the commission. It was competent for the commission to consider evidence on that subject in connection with the evidence on the other questions and issues.

The record shows that the Commerce Commission acted within its statutory jurisdiction, that its order has a substantial foundation in the evidence, and that there is no ground upon which the court should interfere with its final order.

The judgment of the circuit court is reversed and the order of the Commerce Commission is confirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment of circuit court reversed.*
*Order of Commerce Commission confirmed.*