(No. 25801.—

Frank O. Lowden *et al.* Appellees, *vs.* The Illinois Commerce Commission *et al.* Appellants.

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

GEORGE F. BARRETT, Attorney General, ALBERT E. MESEROW, ABE L. STEIN, WALTER, BURCHMORE & BELNAP, KNAPP, ALLEN & CUSHING, WINSTON, STRAWN & SHAW, E. C. CRAIG, V. W. FOSTER, and JOSEPH W. WRIGHT, (HARRY R. BOOTH, SILAS H. STRAWN, BRYCE L. HAMILTON, ADOLPH J. RADOSTA, JR., JOHN S. BURCHMORE, and NUEL D. BELNAP, of counsel,) for appellants.

DANIEL TAYLOR, E. B. HAMILTON, CHARLES V. O'HERN, SHELTON F. MCGRATH, and JAY J. ALLOY, for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Appellees Frank O. Lowden, James E. Gorman and Joseph B. Fleming, trustees of the Chicago, Rock Island and Pacific Railway Company filed with the Commerce Commission a supplement to the freight tariff on sand and gravel from Chillicothe, Illinois, to Springfield and Decatur, Illinois, in which it proposed to establish a rate of 97c per ton to Decatur, and destinations intermediate thereto on the Illinois Terminal Railroad Company, instead of rates in effect of 111c per ton to Springfield and stations north, and 129c per ton to Decatur and destina-

tions between Decatur and Springfield. This proposed tariff was concurred in by the Peoria and Pekin Union Railway Company and the Illinois Terminal Railroad Company. Appellee the McGrath Sand & Gravel Co. intervened on behalf of said proposed rate both for itself and other gravel producers in Chillicothe.

Protests against the proposed reduction were filed by the Alton Railroad Company, the Illinois Central Railroad Company, the Lehigh Stone Company and the Chicago Gravel Company. Upon the protests being filed the Commerce Commission suspended the proposed change in rate pending an investigation. Hearings were had as to whether the proposed reductions were in conformity with the requirements of the Public Utilities act. After the hearings were concluded the commission entered an order on November 15, 1939, annulling the proposed tariff without prejudice to file a new schedule of rates on sand and gravel from Chillicothe via the lines of the appellee railroad companies, of not less than 11c per ton to destinations on the Illinois Terminal Railroad Company east of Springfield, including Decatur.

Appellees filed a petition for rehearing raising only questions as to the propriety of the order and the sufficiency of the findings. The commission granted a rehearing and, on January 10, 1940, made a new final order adhering to the same result, making additional findings claimed to be based on evidence, in connection with a policy with reference to fixing rates between single line carriers and joint line carriers, established by prior holdings of the Commerce Commission in other rate cases.

Appellees filed a petition for rehearing on the new order, which was denied, and an appeal was taken by appellees to the circuit court of Peoria county. The circuit court of Peoria county, upon consideration of the record on appeal, entered an order in which it found that the original order and the order on rehearing of the commis-

sion, were unlawful and unreasonable, against the manifest weight of the evidence and contrary to law; that the findings made in said order of the Commerce Commission have no substantial foundation in the evidence, and that the Commerce Commission, in making said orders, exceeded its powers, and it was ordered and decreed that both orders of the Commerce Commission be set aside. Appellants appealed to this court under the provisions of the Public Utilities act. Ill. Rev. Stat. 1939, chap. 111⅔, par. 73.

The facts out of which the controversy arise are as follows: The McGrath Sand & Gravel Company has a plant located at Chillicothe, Illinois, which produces what is known as coarse aggregate; it is located on the line of the Chicago, Rock Island and Pacific Railway Company and is 18 miles north of Peoria; the Illinois Terminal Railroad Company operates between Peoria, Lincoln, Springfield and Decatur and other communities; Lincoln, Springfield and Decatur use large quantities of this material. A joint line rate for coarse aggregate between Chillicothe and Springfield over the lines of the Chicago, Rock Island and Pacific Railway Company and the Illinois Terminal Railroad Company, and the connecting carrier in Peoria, the Peoria and Pekin Union Railway Company, prior to the filing of the new schedule, was 111c a ton to Springfield and 129c a ton from Chillicothe to Decatur. The distance from Chillicothe to Springfield, via the joint route is 90.1 miles and to Decatur 123.7 miles. The Chicago Gravel Company has a coarse aggregate plant at Joliet, and has connection with Springfield via the Chicago and Alton Railroad Company as a single line carrier. The distance is 111 miles and the rate is 97c per ton. It also has connection with Decatur by joint haul over the Wabash Railroad Company, a total distance of 148 miles, and the rate is 111c per ton. The Lehigh Stone Company has an aggregate plant near Kankakee, and has a single line route via the Illinois Central Railroad Company to Springfield, a distance of 142 miles,

with a rate of 97c per ton, and a single line route to Decatur, a distance of 119 miles, with a rate of 97c per ton. The Material Service Company has a plant at Joliet, and operates under the same conditions as the Chicago Gravel Company. The Merom Gravel Company has a plant at Riverton, Indiana; has a single line haul over the Illinois Central Railroad Company to Decatur, a distance of 117 miles, and a rate of 97c per ton. There is another competing plant at Attica, Indiana, which has a single line haul via the Wabash Railroad Company to Springfield of 137 miles, at a rate of 97c, and to Decatur, a distance of 99 miles, at a rate of 88c. There is also a joint line haul from Joliet to Springfield via the Chicago, Rock Island and Pacific Railway Company and the Illinois Terminal Railroad Company through Chillicothe, a distance of 192 miles, at a rate of 97c, while Chillicothe, on the same joint line route and 88 miles shorter, has a rate of 111c per ton.

Evidence was offered by the appellee railroad companies tending to show grounds for reducing the rate from 111c to Springfield and 129c to Decatur, as follows: Detailed exhibits and schedules showing switching points, distances, estimates of revenue per car per mile under the proposed rate, type of carriers, whether single or joint lines, the decrease in the amount of revenue derived from hauling gravel and crushed rock since the installation of the present rate, tables as to the present and anticipated revenue, and examples showing cases where a single line rate was not adhered to by being made applicable to joint line carriage; the facts with reference to the type of equipment in use, the tractive effort of locomotives, the quantity of empty cars available south-bound from Chillicothe, and the amount of switching charges which would be necessary to complete the haul.

The appellee shippers show their geographic location; the approximate market price of coarse aggregate; their inability to compete with appellant shippers, although more

distant, because of a difference in the rate charged; that shippers employing the single line rate were furnishing ninety per cent of the coarse aggregate in Springfield and Decatur; that these distant shippers had a joint line rate through the locality of Chillicothe at 14c less per ton; that, by reason thereof, their business in Springfield and Decatur and Lincoln had practically disappeared, and that they were seeking only the same rate and not a lower or preferential rate.

Appellants, to obtain a reversal of the judgment of the circuit court, rely principally upon the assertion there was substantial evidence to support the order and finding of the commission; that the latter had the right to apply a principle or theory that joint line hauls between competing points should be higher than single line hauls, and that, by reason of the adoption of this theory, appellant shippers and railroads would be prejudiced by putting them on a parity or equality through the privilege of a joint line operation between Chillicothe and Springfield and Decatur, even though much closer to these destinations, and that a number of joint line rates from other comparable distances of 111c, or higher, were in force.

In approaching the facts in the case we must consider that the sole power of the Commerce Commission comes from the statute, (*Barry* v. *Commonwealth Edison Co.* 374 Ill. 473; *Lambdin* v. *Commerce Com.* 352 id. 104;) and that it has power and jurisdiction only to determine facts and make orders concerning the matters specified in the statute. On the question of rates its powers are confined to determining whether, when put into effect, the rates will be unjust, unreasonable, discriminatory, preferential or prejudicial. (Ill. Rev. Stat. 1939, chap. 111⅔, pars. 32, 38, 41.) Necessarily these terms are to be used with reference to the parties to the cause before the commission, and the effect of the rates under consideration upon them. Orders made by the commission must be based upon

findings. (*Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 341 Ill. 277; *Chicago Railways Co.* v. *Commerce Com.* 336 id. 51.) The findings must be based upon substantial evidence. (*Moline Consumers Co.* v. *Commerce Com.* 353 Ill. 119; *Chicago and Eastern Illinois Railway Co.* v. *Commerce Com. supra; Indiana Harbor Belt Railroad Co.* v. *Commerce Com.* 340 Ill. 304.) When schedules of new rates are posted by a carrier no presumption of wrong arises from the change, or that it was not rightfully done. (*Interstate Commerce Com.* v. *Chicago Great Western Railway Co.* 209 U. S. 108, 52 L. ed., 705.) On matters not coming within the jurisdiction of the commission, a utility, as defined by the statute, has a right to use managerial discretion in the conduct of its own business. (*Interstate Commerce Com.* v. *Alabama M. Railway Co.* 168 U. S. 144, 42 L. ed., 414; *Interstate Commerce Com.* v. *Chicago Great Western Railway Co. supra.*) It has been held that the initiation of a rate is an attribute of management. *Illinois Central Railroad Co.* v. *Commerce Com.* 359 Ill. 563; *United States* v. *Illinois Central Railroad Co.* 263 U. S. 515, 68 L. ed. 417.

Although the order of the commission contains many findings, parts of which are descriptive of the facts in the case, the principal ones requiring consideration are those which find: (a) There is nothing to show the cost of the service proposed by appellees under the rate sought to be installed, and nothing to show transportation of other articles of a comparable basis to sand and gravel; (b) that the operating conditions of the appellee railroads are not more favorable than those of other joint lines; (c) that the proposed service over a multiple route involves conditions less favorable than those encountered over a single line route; (d) that the proposed rates would provide Chillicothe shippers with a parity rate in shipping to Springfield and Decatur with single line routes, but would thereby not conform with the rate-making principle which is claimed to

require a higher rate for a joint line carrier than single line carriage; (e) that the proposed rate would result in undue preference of Chillicothe shippers and undue prejudice to competing shippers; (f) that the present relationship of rates from Chillicothe to Springfield and Decatur and the rates maintained to the same destinations via other lines or railroads from Chillicothe, does not result in undue preference or undue prejudice except as to rates east of Springfield.

There are other recitals and findings detailing the holdings of the commission in other cases, not involving parties before the court, claimed to justify the imposition of a higher rate for joint line haul, without regard to the facts pertaining to each particular case.

The appellee railroads offered detailed proof that the rate proposed would be compensatory and profitable to them. One of the principal facts adduced was that a very large volume of material moved from the Springfield district to the Chicago district, which required a large number of empty cars to be hauled back; that such cars could be used to carry coarse aggregate, and that the revenues produced, after paying switching and other charges, would more than compensate them for the difference in hauling loaded and empty cars, and that other products had been so handled with beneficial results. Many details were furnished both by testimony and from exhibits which justify the belief that the rate proposed would produce adequate revenue to the appellee railroads. The commission made no finding upon this subject, but merely recited that the testimony did not show cost of handling the traffic under the proposed rate. This was a mere negative statement. It gave no consideration to the proof offered, which distinctly showed the revenues would be profitable, and, in fact, showed that the revenue per mile per car was in excess of other railroads hauling crushed rock and gravel into the cities of Lincoln, Springfield and Decatur. It re-

quired the appellant railroad to show a cost before they had been actually permitted to carry such freight at the rate proposed, or had any precise way of knowing the amount of freight that could be handled, which would, of course, have an effect upon the cost. Moreover, this comment (because it is not a finding) only involved an inquiry as to cost, which would not be controlling if the rate was, in fact, compensatory. The law does not require each railroad company to make the same amount of money on each article handled. No comment or finding is made on the evidence showing the net estimated revenue per car per mile for carrying crushed stone or gravel on other hauls comparable to that of appellees. This is an important element in determining what are reasonable rates. (*Chicago and Eastern Illinois Railway Co.* v. *Commerce Com. supra.*) If there is a difference in transportation conditions appellants have not made it appear. The rates compared were from points just across the Mississippi river, in Iowa, and while somewhat greater in distance, we are bound to know the territory. The topography of the country is not materially different. Courts may take judicial notice of geographical facts and the courses and character of great rivers of the country. (1 Jones on Evidence, (Horvitz ed.) sec. 127.) There has not only been no finding upon the question whether the rate proposed to be installed is compensatory, but the evidence submitted amply shows it would be a just and reasonable rate if put into effect.

The findings designated "b," "c" and "d" are all based upon the theory, or, as it is called, rate-making principle, that a joint line haul must, in all cases, necessarily carry a higher rate than a single line haul between the same points. No authority is cited to support this proposition, and none is to be found in the statutes. It conflicts with the principle that management, except as limited by the Public Utilities act, remains in the utility. It may well be that the principle can have a general application, but it cannot be inflexibly

applied. The particular facts in the present case disclose that appellee railroads can utilize for freight carriage cars that would otherwise be hauled empty, and when it is shown that a profitable return haul can be had as against one without revenue, with all switching charges absorbed, theory must yield to facts.

It is not pointed out, other than as a basis for a general principle, why if two carriers, by reasons of special conditions, are able profitably to move freight and serve communities within a competitive area, at the same rate as that charged by a single line carrier, that it should be arbitrarily required to charge more. The argument is made that such has been the rule in other rate structures, and many instances are called to our attention in previous orders of the commission, but such findings in other cases are not conclusive to support a like finding in this case. *Chicago and Eastern Illinois Railway Co. v. Commerce Com.* 343 Ill. 117.

The finding of the commission that the operating conditions of the proposed joint line route are not more favorable than those of the other joint routes, and do not justify lower rates than are effective on such other joint lines, and hence, as the commission recites "when the matter of joint *vs.* single line operation is considered, are not more favorable than the operating conditions via the single line routes * * * and do not justify rates from Chillicothe on the single line basis," is not material to the controversy. In the first place, it not only goes to show that it is a practical application by the commission of the principle of higher rates for joint hauls, but, further, makes an issue between appellees and parties who have not intervened in the proceeding. As a matter of fact there appear in evidence four different joint line hauls from Joliet, Illinois, ranging from 185 to 206 miles in length, in which the rates are fixed at 97c per ton, and one of these joint line routes goes through the city of Chillicothe,

Illinois, without giving the shippers there the benefit of the rate to compete with Joliet shippers, even though it is some 90 miles closer to the destination. In passing upon this proof the commission merely finds that the conditions under which the joint line rates may be installed are not more favorable than those applicable to single lines. We find nothing in the statute that requires, as a condition precedent, that the situation shall be more favorable to entitle a competing carrier to the right to install the same rate.

In these same findings the commission finds that the installation of the proposed rate will put the shippers of Chillicothe upon a parity with those of Joliet, Kankakee and other points, but as a reason or ground for denying this parity, says: "But if rates are to conform to * * * rate-making principles followed by carriers generally, then Chillicothe should pay a higher rate because their freight is transported on joint lines of railroad instead of on a single line." Counsel for appellants admit that there is no moral or legal ground for requiring joint line service to be higher than single line service. They claim that it has a factual basis. In our opinion it is only a fact, the same as any other rule of law, when enacted by proper authority, becomes a fact. The commission has assumed authority to put this principle into effect for rate-making purposes. In the present case the principle is incorporated as though it were a fact, when, in reality, it is a commission-made rule, and the evidence in the case is found not to square with this rule.

It is plain the commission did not base its order and findings upon the facts, but predicated them upon a supposed principle of rate-making which disregards parity or equality in fact, and produces a result that, in the instant case, deprives appellee railroads of legitimate business, and appellee shippers of the opportunity to successfully compete with more distant competitors. To sustain the commission's order we must approve, as a matter of law, that in all

instances a joint line rate between the same points must be higher than a single line rate. It is by reason of the application of this principle that the commission holds the shippers at Chillicothe will receive an undue preference and appellant shippers an undue prejudice. The rate proposed gave appellee shippers only the benefit of parity. It recognized, in part, natural location, which is no ground for setting it aside. *Illinois Central Railroad* v. *Commerce Com. supra.*

The provisions of the statute authorizing a review of the orders and findings of the commission were not intended to be a mere process by which the findings are to be approved without regard to what is disclosed by the substantial evidence in the case. These are only *prima facie* evidence that they are reasonable. We are not bound to believe facts in evidence establish a given conclusion if the latter is not reasonable. We are cognizant of the contention made by appellant of the scope of review on appeal from orders of the Commerce Commission, and we recognize it when the findings are supported by substantial evidence. In this case, however, the entire order is based upon a rule, or as it is called, a principle adopted by the commission. The law administered is not found in the Public Utilities act, but is one created by the commission, and, hence, beyond its authority.

When the purposes of the Public Utilities act are considered, the rate proposed by the appellee railroads does not prefer them over the respondent railroads, nor does it prefer the appellee shippers over appellant shippers. It does not discriminate against any one, but puts them all on a parity. The shipper cannot complain because he is being placed upon the same competitive basis, whereas to uphold and sustain the order of the commission in this case would, in our opinion, without substantial evidence to support it, violate the underlying principles of the Public Utilities act.

Stress is also placed by appellants and by the commission upon the threat that appellant railroads and shippers will immediately apply to reduce the rates now in force corresponding to the differential now in existence, and thereby the rate-making principle or plan which has been in force will be disrupted, and numerous controversies brought before the commission for decision. It is sufficient to say that these are not reasons for disapproving a rate which appears to be just and reasonable.

The record in this case is voluminous and contains a large number of exhibits, but appellants have seen fit to set forth in the abstract only such exhibits as are referred to in their argument. It has required some considerable effort to search the record for the details of other applicable exhibits.

There are many other matters referred to in the finding and order of the commission, and in the briefs of respective counsel, all of which we have examined with care, but the matters above discussed are determinative of the case. We are satisfied that the circuit court was fully justified in entering its judgment setting aside the order of the Commerce Commission in this proceeding, and the judgment of the circuit court of Peoria county is, accordingly, affirmed.

*Judgment affirmed.*