THE INSTITUTE OF SHORTENING AND EDIBLE OILS, INC., Petitioner, *v.* THE ILLINOIS COMMERCE COMMISSION, Respondent.—(THE MUNICIPALITIES OF CARLYLE, BREESE, FREEBURG, HIGHLAND AND MASCOUTAH, ILLINOIS, Plaintiffs-Appellants, *v.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees—(WILSON AND COMPANY, INC., Intervenor-Appellee).)

Fourth District   No. 13523

Opinion filed January 20, 1977.

Geismann & Johannes, of Highland, for appellants.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos and Peter A. Fasseas, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

William T. Hart and David N. Cook, both of Schiff, Hardin & Waite, of Chicago, for appellee Illinois Power Company.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 18, 1973, defendant Illinois Power Company (I.P.Co.) filed a petition with defendant Illinois Commerce Commission (Commission) seeking authorization to curtail or discontinue gas service to certain customers classified under I.P.Co. schedules as interruptible industrial customers. Other relief not here in point was also requested. Plaintiffs, the municipalities of Carlyle, Breese, Freeburg, Highland and Mascoutah, Illinois, were among the more than 100 customers of that class then being served by I.P.Co. After a hearing at which plaintiffs and defendant Wilson and Company appeared, the Commission entered an order August 14, 1974, denying the request of the petition but ordering I.P.Co. to file certain new tariff sheets. These sheets were to create a classification of "limited firm service" to which the interruptible customers such as plaintiffs would be permitted to transfer under certain conditions. The sheets were also to set rates for the "limited firm" customers in much higher amounts than were being paid by the interruptible customers. Plaintiffs appealed to the Circuit Court of Sangamon County pursuant to section 68 of "An Act concerning public utilities" (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72). Upon affirmance by that court, plaintiffs have appealed to this court.

■■ Customers receiving service from a utility under an "interruptible" classification do so under an arrangement whereby service to them may be cut off if the utility would be otherwise unable to serve its other customers. One purpose of the classification is to make use of the full capacity of the utility at times when demand is not at its peak. Because of the contingent nature of the service, rates are traditionally lower than those for other customers. (*Produce Terminal Corp. v. Illinois Commerce Com.* (1953), 414 Ill. 582, 112 N.E.2d 141.) Such was the arrangement between plaintiffs and I.P.Co. here. The evidence at the Commission hearing indicated that I.P.Co. had seldom had to interrupt service in the past. The evidence did show, however, that I.P.Co. had over 9000 applicants for service many of whom sought to use the gas for residential space heating. I.P.Co. sought to curtail or discontinue service to those in the interruptible class in order to give service to more residential customers.

The Commission recognized that public policy required that a high priority be given to use of gas for residential space heating purposes as an efficient use of limited supplies of the fuel and that I.P.Co. had an "immediate, pressing problem" in meeting the needs of these potential residential customers. It also found, however, that hardship would occur to some of the interruptible industrial customers if their supplies were cut off because of the great cost to these customers of converting to other fuel. Rather than permitting direct curtailment or discontinuance of

service to these customers, the Commission sought by its order to provide for a classification which would give these customers a more sure source of supply but at a price that would encourage those who could do so with the least hardship to convert to another fuel. To the extent that some did convert, capacity would become available for residential users. The Commission ordered that the tariff sheet provide that the limited firm service was to be open only to those in the interruptible class who chose to accept it within 20 days of the filing. The service was to be provided only for existing gas burning equipment. The rates were to be at 12¢ per therm for the first year, 17¢ per therm for the second year and 22¢ per therm for the third year with the further provision that the rate should ultimately be fixed at a level 10 percent above alternate fuel prices. The theory adopted by Commission in framing the order was consistent with that recommended by the Federal Power Commission. *End Use Rate Schedules-Utilization and Conservation of Natural Resources*, F.P.C. Docket No. R.M.75-19, 40 Fed. Reg. 8571-75.

Plaintiffs contend that the Commission order had the effect of making a rate determination which was improper because: (1) they had no notice that such a determination was to be made and, therefore, no opportunity to prepare and present evidence on that issue; (2) the determination was made without evidence in the record or findings of fact in the order to support it; (3) the Commission has no power to determine rates on its own initiative as done here and (4) the rates set were unfair, unreasonable and discriminatory.

The procedure by which the Commission regulates utilities such as I.P.Co. is governed by "an Act concerning public utilities," as amended (Ill. Rev. Stat. 1973, ch. 111 2/3, pars. 1—95). The I.P.Co. petition sought relief pursuant to section 49a of the Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 49a) which empowers the Commission, after a hearing on a petition or on its own motion, to authorize or require a utility to curtail or discontinue service. The section also authorizes the Commission after such a hearing to "otherwise to regulate the furnishing of service, whenever and to the extent such action is required by the convenience and necessity of the public * * * by reason of * * * shortage of fuel * * *." Defendants rely upon this provision and the evidence of a shortage of gas to authorize the entry of the disputed portions of the instant order. To decide whether defendants are correct, we must first examine the procedural scheme of the Act.

Section 33 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 33) requires every public utility to file a schedule of its rates, charges, and classifications with the Commission. Section 36 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 36) states that "[u]nless the Commission otherwise orders, and except as otherwise provided in this Section," no new rates, charges or classifications shall be

made without giving 30 days notice to the Commission and persons affected by filing a schedule of the charges and by giving notice by publication. "For good cause shown" the Commission is authorized, without giving notice, to allow changes "by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published." The section further provides that the changes, upon going into effect, shall be subject to modification after a hearing on the Commission's own motion or upon a complaint.

Section 64 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 68) provides that written complaints may be made upon the Commission's own motion or by other persons or entities and that the complaints shall be set for hearing upon notice. Section 65 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 69) states that at the conclusion of the hearing, the Commission shall make "findings concerning the subject-matter and facts inquired into and enter its order based thereon." Section 41 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 41) states that when, after a hearing, the Commission finds that rates, charges or classifications are "unjust, unreasonable, discriminatory or preferential," or, on the other hand, "insufficient," the Commission shall determine proper rates, charges or classifications and fix them by order.

■■ The procedural scheme of the Act is such that the utility may initiate changes in rates, charges and classifications upon notice or without notice as the Commission may order pursuant to section 36. If the changes are permitted to go into effect, they remain in effect unless action is taken against them by a complaint by the Commission or some other person or entity all pursuant to sections 41, 64 and 65. Plaintiffs contend that the requirements of sections 64 and 65 for notice, findings and evidence to support the findings are applicable to the procedure by which the instant order was entered. We note, however, that the order was not entered pursuant to any complaint and was subject to modification by further order of the Commission. It was more analogous to an order entered under section 36 authorizing changes to go into effect immediately than to an order on a complaint. In *Antioch Milling Co. v. Public Service Co.* (1954), 4 Ill. 2d 200, 123 N.E.2d 302, the court ruled that neither a formal hearing or findings of fact are necessary to support an order permitting changes to go into effect immediately under section 36. Obviously no showing of evidence of record to support the order is necessary if no formal hearing is necessary. By the express provisions of section 36 an order may be entered pursuant to that section without notice to interested parties.

The effect of the instant order is to (1) require I.P.Co. to file a schedule as it could do if it was giving notice under section 36 and (2) order that the rates and classifications on the sheet go into effect immediately. These

rates and classifications are subject to further order of the Commission. A person or entity entitled to complain could have done so and would have been entitled to be heard by the provisions of sections 41, 64 and 65. We determine the procedure used here to be consistent with the procedural requirements of the Act. The order was not erroneous for lack of notice, evidentiary support or findings.

■■ Plaintiffs' argument that the order is erroneous because the rates to be set on the sheet to be filed were initiated by the Commission rather than the I.P.Co. is based upon the cases of *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1922), 306 Ill. 109, 137 N.E.2d 449, *Illinois Bell Telephone Co. v. Commerce Com.* (1922), 304 Ill. 357, 136 N.E.2d 676, and *Lowden v. Illinois Commerce Com.* (1941), 376 Ill. 225, 33 N.E.2d 430. The court held in the first case, and stated by way of dictum in the others, that initiation of rates by the Commission in the first instance is improper. In *Lowden* the court stated, "It has been held that the initiation of a rate is an attribute of management" (376 Ill. 225, 231, 33 N.E.2d 430, 434). In each of those cases, the party appealing was the regulated utility. In the instant case, appeal is taken by the customers of the utility. In *Produce Terminal Corp. v. Illinois Commerce Com.* (1953), 414 Ill. 582, 599, 112 N.E.2d 141, 149, in affirming, on appeal by a utility's customers, an order that required the utility to set up a reserve fund, the court stated, "If management does not object to this alleged 'invasion,' certainly appellants may not be heard to do so." Here the filing of the sheet listing rates as ordered could have been done under section 36 by I.P.Co. on its own initiative. I.P.Co. does not object to doing so. Plaintiffs cannot complain that I.P.Co's. prerogatives are being violated.

In *Antioch Milling Co.*, the court stated, "The commission is not just an umpire. It has been given active functions of policy making and supervision. It may initiate hearings on its own motion, and it has a wide discretion in shaping proceedings brought by others." (4 Ill. 2d 200, 210, 123 N.E.2d 302.) Here the proceedings were initiated by I.P.Co. seeking relief under section 49a. The statement in that section that where required by a shortage of fuel, the Commission may regulate the furnishing of fuel service is an example of the wide discretion granted to the Commission. In *Municipality of Princeton v. Illinois Commerce Com.* (1974), 17 Ill. App. 3d 812, 821, 308 N.E.2d 625, 632, the court stated "Or, to state the matter in the context of the Commission's duty under section 49a, what is required will necessarily vary and be dependent upon the facts and circumstances surrounding each individual gas utility." Although in that case the court affirmed an order allowing curtailment, the doctrine pronounced is applicable to the instant case. Here, in order to attempt to prevent the hardship of curtailment, the Commission set in motion procedures which the Commission believed to be less drastic and would,

if remaining in force, enable plaintiffs to receive continued service even if at higher rates.

■■ As we have indicated, we have determined the procedures shaped by the Commission for this case to be consistent with the general procedural scheme of the Act. The notice requirements of section 49a were met. The evidence at the hearing fully showed the existence of a shortage of gas to meet the needs of an expanding number of prospective residential space heating customers. It is within the policy making prerogative of the Commission to determine that this group is a most efficient user of gas. The evidence also showed that public convenience and necessity required innovative action to meet this problem. Under the circumstances shown by the record in this case, and in view of the procedure used, we rule the order entered to have been within the power given the Commission by section 49a.

■■ The basis of the classification and rate system initiated by the Commission is to set rates for those in the limited firm customer classification at a level that would encourage the use of other fuels. No case has been called to our attention passing upon the propriety of such a method of setting rates. Plaintiffs correctly argue that they have had no opportunity to prepare and present evidence as to any unfairness, unreasonableness or discrimination in such a method or the rates ordered filed. As we have indicated, any proper person or entity could have and can file a complaint as to the rates. Nothing in the record before us here, however, indicates that the rates are improper. Although the new classification is listed as a firm classification the order provided that it would still be subject to interruption under certain conditions. In *Produce Terminal Corp.*, the court ruled that the rates for interruptible service may be set in relation to costs of other fuels and need not be based upon the incremental cost to the utility of providing the service. If a class of users can be denied gas completely in order to serve a public policy of making gas available to another class of users, it is neither unjust, unreasonable nor discriminatory to those in the low priority class to raise their rates to the point that those who can most easily do so, will convert to another form of fuel. In *Produce Terminal Corp.*, the court noted that unjust enrichment to the utility would be prevented because the utility was ordered to put revenues from the permitted increase in rates into a reserve fund to be used for improvements. Here, I.P.Co's. entire rate structure was under review at the time of the order. Additional revenue from the increased rates from those in the new classification would be taken into account in determining the utility's need for revenue from other customers. The increase in this revenue would tend to decrease the need for revenue from others.

Defendants contend that plaintiffs have no standing to appeal. In view

of the disposition we make of the case, we need not decide that issue.

The judgment of the circuit court affirming the order of the Commission is affirmed.

Affirmed.

MILLS and REARDON, JJ., concur.