EDGE-SCOTT FIRE PROTECTION DISTRICT, Petitioner-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, *et al.*, Respondents-Appellees.— (EASTERN PRAIRIE FIRE PROTECTION DISTRICT, Intervening Petitioner.)

Fourth District    No. 14082

Opinion filed May 9, 1977.

Winkelmann and Winkelmann, of Urbana, for appellant.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Rodney C. Howard, and Mary C. Ubatuba, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Chapman and Cutler, of Chicago, and Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign (John N. Vander Vries, Daniel J. Kucera, and James L. Capel, Jr., of counsel), for appellee Northern Illinois Water Corporation.

Mr. JUSTICE REARDON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court for the Sixth Judicial Circuit, Champaign County, which affirmed an order of the Illinois Commerce Commission (*Edge-Scott Fire Protection District v. Northern Illinois Water Corp.*, I.C.C. Order No. 59148, May 29, 1975) denying plaintiff's petition praying the rescission, alteration or amendment of another commission order fixing new water rates and new rates for the rental of utility owned hydrants. The order promulgating the new rates was announced by the commission on December 6, 1973. *Northern Illinois Water Corp.*, I.C.C. Order No. 58179, Dec. 6, 1973.

Plaintiff based its petition to the commission on section 67 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 71) which in part provides:

> "If, after such rehearing and consideration of all the facts, including those arising since the making of the rule, regulation, order or decision, the Commission shall be of the opinion that the original rule, regulation, order or decision or any part thereof is in any respect unjust or unwarranted, or should be changed, the Commission may rescind, alter or amend the same."

Plaintiff's appeals to the circuit court and to this court are based on section 68 of the Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72) which provides for the judicial review of administrative proceedings before the commission. See *Institute of Shortening & Edible Oils, Inc., v. Commerce Com.* (1977), 45 Ill. App. 3d 98, 359 N.E.2d 231.

Plaintiff alleges that, prior to entry of the order of December 6, 1973, it paid the defendant utility $62.50 per hydrant for annual rental fees, but that, after the entry of the order by the commission, it was charged an annual "connection" fee of $95 plus an annual rental fee of $55 per hydrant. Plaintiff alleges that it is a fire protection district serving parts of Champaign county and that it has been organized pursuant to section 1 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1973, ch. 127½, par. 21). Plaintiff alleges that the fees charged to it by the defendant utility, pursuant to the commission's order, are substantially greater than the fees charged to cities and villages receiving substantially the same service from the utility in Champaign county. Plaintiff contends that it only uses the water furnished to it by the utility for purposes of public fire safety, but that it is nevertheless charged, pursuant to the commission's order, as if it were a "private fire protection service" and that it is unjustly and discriminatorily required by the order to pay an annual "connection charge" for each hydrant furnished to it by the utility, whether or not such hydrants are initially connected or reconnected to the utility's service system. Finally, plaintiff contends that it has exhausted all of its available administrative remedies prior to the filing of this appeal.

The Public Utilities Act expressly provides for a limited form of judicial review from Commerce Commission orders in that the commission's findings and conclusions regarding factual matters are deemed prima facie true and will not be set aside unless they are against the manifest weight of the evidence. (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72.) In addressing the scope of this review, our supreme court has stated:

> "This court has limited its inquiry in an appeal from the commission to a determination of three questions: (1) Did the commission act within the statutory powers given to it; (2) is there

substantial foundation in the evidence upon which the commission could base the order; and (3) has a constitutional right been violated. (*City of Chicago v. Commerce Com.* 356 Ill. 501.) In reviewing a case of this nature the duty does not devolve upon us to re-try the case upon its merits and substitute our judgment for that of the commission. Orders of the commission are entitled to great weight, for they arise out of the deliberations of its members, who are much better qualified to interpret the testimony and charts of specialists and technicians. We will not set aside a commission order unless it is arbitrary or unreasonable or in clear violation of a rule of law. Basically, a review of commission orders by this court is to keep the commission within its jurisdiction, so as not to violate any rights given by the constitution. When the sufficiency of the evidence to support an order of the commission is questioned the order will not be set aside unless it is clearly against the manifest weight of the evidence. *Commerce Com. v. Chicago and Eastern Illinois Railway Co. 332 Ill. 243." South Chicago Coal & Dock Co. v. Commerce Com.* (1936), 365 Ill. 218, 224-25, 6 N.E.2d 152; see also *Du Page Utility Co. v. Commerce Com.* (1971), 47 Ill. 2d 550, 558, 267 N.E.2d 662.

Plaintiff alleges in this court that the commission has unjustly and unreasonably increased plaintiff's water and hydrant rental rates in violation of section 32 of the Public Utilities Act which provides that "[e]very unjust or unreasonable charge made, demanded or received for such produce or commodity or service is hereby prohibited and declared unlawful." (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 32.) Plaintiff concedes, however, that the commission may permit a utility to reasonably classify its services according to amount used, time and purpose of use and according to other relevant factors. Here, although plaintiff claims to be a municipal corporation entitled to classification by the utility as a public, not private fire protection district, we note that section 1—1—2 of the Illinois Municipal Code defines a municipality as:

"* * * * a city, village, or incorporated town * * * [but it] does not include a township, town when used as the equivalent of a township, incorporated town which has superseded a civil township, county, school district, park district, sanitary district, *or any other similar governmental district*." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 24, par. 1—1—2.)

Section 1 of article VII of our 1970 Constitution also states:

" 'Municipalities' means cities, villages and incorporated towns. 'Units of local government' means counties, municipalities, townships, special districts, and units, designated as units of local

government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts."

In announcing its proposal for the local governmental article of the constitution, the Local Government Committee of the Constitutional Convention stated:

" 'Municipality' cannot be used without definition.

\* \* \*

The text says precisely what the committee intends, without danger that essential words might be omitted inadvertently. Furthermore, it permits at least functional differentiation of general purpose and special purpose governmental entities, an end which the committee believes is both desirable and important." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1597-98.

■■■ Our analysis of these authorities leads us to conclude that our legislature and the authors of our 1970 Constitution did not intend for "municipal corporations" to be treated at all times in the same manner in which cities, villages and unincorporated towns are to be treated. While plaintiff correctly argues that the statute creating fire protection districts (Ill. Rev. Stat. 1973, ch. 127½, par. 21) refers to the districts as "municipal corporations," we find that that legislative designation does not prohibit the defendants from revising the defendant utility's rate structure in such a manner that plaintiff is considered, for rate-making purposes, a "private fire protection district." Such a classification is well within the discretionary power delegated to the commission by the legislature, a power which our supreme court has described as follows:

" 'The power to make rates, of necessity, requires the use of pragmatic adjustments which may be called for by the particular circumstances,' (*Iowa-Illinois Gas and Electric Co. v. Commerce Com.*, 19 Ill. 2d 436, 442), and we judge that the Public Utilities Act invests the Commission with sufficient discretion to make those 'adjustments.' In authorizing the Commission to consider 'other relevant factors' as a basis for classification of service, the legislature recognized the complexity and difficulty, if not impossibility, of establishing explicit and exclusive grounds which would authorize a public utility to classify its service. We consider that 'other relevant factors' in section 32 of the Act is to be read as authorizing the Commission to approve rate classifications grounded on considerations other than the type of service provided by the utility." *Citizens Utilities Co. v. Commerce Com.* (1971), 50 Ill. 2d 35, 41, 276 N.E.2d 330.

■■ After reviewing the statutes from which fire protection districts derive their authority (*e.g.*, Ill. Rev. Stat. 1973, ch. 127½, pars. 21, 31) and after considering the functions performed by the districts, we cannot say that it is unjust or unreasonable for the defendants to distinguish those districts from municipalities like the cities of Urbana and Champaign or villages in Champaign County. The purpose of a fire protection district is generally to provide physical protection from fires and other related emergency services. The responsibility of a city or village, however, is much broader and includes among other things, the regulation of land use, the construction and maintenance of streets and thoroughfares, the power to extend privileges to utilities authorizing the utilities' construction of supply or distribution facilities, and to deal with numerous other problems existing in the areas where both the city and the utility serve.

In *Citizens Utilities Co. v. Commerce Com.*, our supreme court considered a case in which a number of investor-owned water companies claimed that they were the victims of unlawful discrimination by an electric utility which charged lower rates to municipal water companies. The parties to *Citizens Utilities Co. v. Commerce Com.* stipulated that the same type of service was supplied to the investor-owned and municipal water companies at the same cost to the electric utility, however, the court ruled that the electric utility could validly assign different rate structures to the two types of water companies. As the court stated:

> "The court has recognized that a municipality which has elected to operate its own generating plant has the authority to exclude an electrical utility from operating in the community. (*City of Geneseo v. Illinois Northern Utilities Co.*, 378 Ill. 506.) Too, a municipality has the authority to tax an electrical utility and, in addition, may seek compensation from the utility, which may be in the form of money or products or services, for the use of municipal property. * * *

> Thus, the municipalities had the authority to operate their own power facilities and to exclude Edison's operations. They had the right to compensation for the utility's use of municipal facilities in addition to the power to tax. Edison was given the right by statute to make rate classifications based on the service provided and other relevant factors. It is not unreasonable to assume that municipalities denied or given a preferential rate would take this into account when negotiating franchises with Edison. We consider that the almost ruling position municipalities occupied in relation to Edison could reasonably be regarded as a 'relevant factor,'

which would permit Edison to create a municipal classification." 50 Ill. 2d 35, 42-43, 276 N.E.2d 330, 334.

■■ ■ Accordingly, we hold that the "almost ruling position" of the cities of Champaign and Urbana and other villages in Champaign County, in relation to the position of the defendant utility, is a "relevant factor" tending to justify the different rates assigned to plaintiff and the cities or villages of Champaign County. A mere statutory reference to the plaintiff as a "municipal corporation" does not give the plaintiff a ruling position over the defendant utility and does not require our interference with the commission's rate-making in this case.

■■ In closing, we note that plaintiff presented no probative evidence tending to show that the rates actually charged to the plaintiff were in excess of the cost of the services actually supplied. On the contrary, the defendant utility presented competent evidence tending to show that the cost of its service to the plaintiff was at least equal to the rate charged to the plaintiff. Plaintiff has, therefore, not sustained its burden of proving that the commission acted outside its statutory powers in fixing the challenged rate. Accordingly, we find that there is a substantial evidentiary foundation for the rate and that plaintiff's constitutional rights have not been violated.

Affirmed.

CRAVEN, P.J., and TRAPP, J., concur.