(No. 19991.—

THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY *et al.* Appellants, *vs.* THE COMMERCE COMMISSION *ex rel.* The Cairo Association of Commerce *et al.* Appellees.

*Opinion filed February 18, 1931.*

118

KENNETH L. RICHMOND, ELMER A. SMITH, J. R. CONNELL, JOSEPH WHITNEL, and LEO P. DAY, (D. P. CONNELL, and E. M. SPILLER, of counsel,) for appellants.

RALPH MERRIAM, and R. W. ROPIEQUET, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

The Cairo Chamber of Commerce and certain coal dealers in Cairo filed a complaint with the Illinois Commerce Commission against the Chicago and Eastern Illinois, the Missouri Pacific, the Mobile and Ohio, the Illinois Central and the Cleveland, Cincinnati, Chicago and St. Louis Railway Companies, in which they alleged that the rate of $1.13 per ton on coal from certain mines in southern Illinois to Cairo, Illinois, and to certain intermediate points, is unjust, unreasonable, in violation of sections 32 and 38 of the Commerce act, and that the rate should be reduced to 70 cents per ton. Intervening petitions were filed by the Illinois

Coal Traffic Bureau, a voluntary organization of coal companies, and the Fifth and Ninth District Coal Traffic Bureau, a voluntary organization in the Belleville group, but the commission held that these intervenors failed to introduce evidence of such a character as to establish their claim. The answers of the defendants were general denials that the rate was unjust, unlawful or discriminatory and a denial that complainants were entitled to relief. Evidence was heard and the commission entered an order finding that Cairo should be grouped with all destinations here under consideration in which the average distance from the shipping points involved is in excess of 50 miles, which group is referred to as the Inner Cairo group and embraces points on the Missouri Pacific south of Wolf Lake, points on the Mobile and Ohio south of Weaver Hill, points on the Illinois Central south of Dangola and Wolf Lake, points on the Chicago and Eastern Illinois south of Perks and Boaz, and points on the Cleveland, Cincinnati, Chicago and St. Louis south of Grand Chain. From the origin points involved to the destinations within this group the commission found that the average distance was 66 miles, the average short-line distance was 63 miles, and a rate of $1.00 per ton was fixed in lieu of the present rate of $1.13. The commission also found that in what is termed the Outer Cairo group, embracing all points of destination involved in the complaint north of the Inner Cairo group, the rate should be 90 cents in lieu of the $1.13 rate, and that appellees were entitled to reparation. A petition for a rehearing was overruled, an appeal was prosecuted to the circuit court of Williamson county, where the order was affirmed, and the case comes to this court upon appeal.

As grounds for reversal appellants insist that the order is based for the most part on a mere showing of the percentage increases in rates from southern Illinois to Cairo and is predicated upon erroneous distances between the points involved; that the commission adopted as the sole

standard for appraising the reasonableness of the assailed rates certain abnormally low rates offered in evidence by appellees; that the commission erred in basing its order on rate comparisons which were not based on evidence showing similarity of conditions; that the order is without substantial foundation in the evidence, is contrary to the weight of the evidence, shows on its face that the commission failed to give due weight to the testimony offered by appellants and failed to receive testimony properly offered by appellants in their petition for rehearing.

The complaint alleged that the appellants' rates from southern Illinois mines to Cairo and other intermediate stations are grouped and each destination point is accorded the same rate. Appendix "A" attached to the complaint shows the mines, shipping and billing stations in the group, appendix "B" shows the destination points, and appendix "C" shows the distances between points on each of the five railroads. It is alleged that possibilities for the future development of the city of Cairo and points taking the same rate depend partially upon a just and reasonable coal rate; that the present rate from shipping points shown in exhibits "A" and "C" to destinations shown in exhibits "B" and "C" are unjust and unreasonable; that undue preference is given to East St. Louis, Illinois, in violation of section 38 of the act; that the average haul from points of origin to destinations is 56.7 miles; that for two years prior to filing the petition appellees received numerous carloads of coal with assessed freight charges in accordance with the present rates, which were paid. The prayer is for a reduction of rates, for reparation and restitution, together with legal interest for excessive and unjust rates charged within two years prior to the filing of the complaint.

The commission in its order found that the complaint assailed the reasonableness of rates from certain coal mines in southern Illinois to Cairo and intermediate points, which mines are included in the rate group known as the southern

Illinois and DuQuoin districts; that appellees suggest a different basis of rates from mines within 90 miles of Cairo than from mines over 90 miles, and undue prejudice is alleged in favor of East St. Louis, which has a rate of 99 cents per ton, which, it is alleged, hinders the industrial growth of Cairo and other destinations involved; that the history of the $1.13 rate from all mines under consideration to all destinations involved is as follows: On July 9, 1909, the rate was 60 cents. This rate was first advanced to 63 cents by the Illinois Public Utilities Commission in 1917 and then to 78 cents during the same year. It was advanced in 1918 by order of the Director General of Railroads to 98 cents. In 1919 the Illinois Public Utilities Commission advanced it to $1.37. A ten per cent reduction was applied to freight rates generally on July 1, 1922, and this rate was reduced to $1.23. On November 20, 1923, it was voluntarily reduced to the present rate of $1.13. The order found that the percentage of increase in the $1.13 rate over that of July 9, 1909, is 88.3 per cent, and the percentage increase over the rate of April 14, 1917, is approximately 80 per cent, while freight rates generally in Illinois have been increased approximately 65½ per cent since April 14, 1917. It found that the principal competition of the mines in this group is western Kentucky, which has a rate of $1.46 to Cairo and a rate of $1.48½ to East St. Louis; that the rates from Kentucky from May 22, 1911, to January 20, 1923, varied from $1.25 to $1.62, and the present rate of $1.46 from western Kentucky to Cairo shows a percentage increase of 33 per cent over the rate in effect April 14, 1917; that prior to September 1, 1919, there were no fixed rates from western Kentucky to points in Illinois, including East St. Louis, but on September 1, 1919, the Interstate Commerce Commission prescribed a differential of 57½ cents over the Belleville group rate to East St. Louis, and that these rates were considered as maximum rates at Cairo and other intermediate points; that

during 1925, 75 per cent of the coal used at Cairo came from the mines of southern Illinois and 25 per cent came from Kentucky; that the evidence on behalf of the Illinois Central shows that 30 per cent of the coal hauled by it to Cairo was delivered off of the rails of that railroad and it absorbed $2.70 per car switching charges; that 68 per cent of the coal hauled by the Missouri Pacific to Cairo was delivered off of the rails, with a charge of $2.70 per car to $3.60 per car; that in seeking a rate of 70 cents from the mines involved in this complaint the petitioners rely principally upon an average distance of 56.7 miles from all points of origin to all points of destination and do not consider any mines over 90 miles from Cairo, and in this way eliminate certain mines from which it is claimed by appellants considerable coal is delivered; that the petitioners' evidence shows an average distance to Cairo of 75½ miles, the evidence of the Illinois Coal Traffic Bureau shows an average of 63.7 miles from all points of origin to points of destination, an average distance from all of the aforesaid origin points of 80.3 miles and an average short-line distance from all shipping points listed to Cairo of 71 miles, while the evidence of the railroad companies shows the average distance to Cairo to be 82 miles.

The order further found that the southern Illinois rate group to Cairo has been maintained for sixteen years; that these rate groups were established during the building of the coal industry and the construction of railroads where new mines were opened and the roads extended to serve them; that the quantity of the coal, the thickness of seam, the transportation conditions and all competing elements were considered at the time these rate groups were originally established; that Cairo should be grouped with all destinations under consideration to which the average distance from the shipping points involved is in excess of 50 miles, which group should be known as the Inner Cairo group, and the roads and stations included in that group

are specified in the order as hereinbefore stated; that from the origin points involved to destinations the average distance is 66 miles, the average short line distance is 63 miles, and the outer group embraces all points of destination north of the Inner Cairo group; that appellants contend that petitioners have overlooked the fact that there are coal mines within a few miles of East St. Louis while the mines nearest to Cairo are at New Burnside and Stonefort, 52 and 56 miles, respectively, from Cairo; that coal has not moved from either of these last named mines during the past two years and that both of said points are without side-track facilities, and that if these two mines are excepted the nearest mine to Cairo is at Murphysboro, 62 miles distant. The order found that the rate of 99 cents from the southern Illinois group to East St. Louis is differentially related to the rate from the Belleville group to East St. Louis and has for many years been made with relation to the rates from the near by mines in the Belleville group; that the rates to East St. Louis from mines in southern Illinois outside of the Belleville group are differentially related rates; that the situation is different at Cairo; that the average distance from the southern Illinois group to East St. Louis is 97 miles, the ton-mile earnings under the present rates average one cent, and in some cases carriers absorb switching charges at East St. Louis of 16 cents per ton while the absorption of switching charges at Cairo is not in excess of $3.60 per car and in most instances $2.70 per car; that the railroads insist that the transportation conditions at Cairo are substantially different from those at East St. Louis, the movement to Cairo being over heavy ascending grades while the movement to East St. Louis is over descending grades, and the order found that the transportation conditions between southern Illinois and Cairo are more adverse than those found in any other part of the State. The order found that the rate of $1.13 from western Kentucky to Paducah prescribed by the Kentucky commission

produced a ton-mile earning of a little over one cent; that applying these ton-mile earnings to the average short-line distance of 63 miles from the southern Illinois mines to Cairo and points grouped therewith, produces a rate of 72 cents; that any difference in transportation conditions from southern Illinois to Cairo as compared with transportation conditions from western Kentucky to Paducah is in favor of the Illinois movement. Comparison is made with rates on sand, gravel, crushed stone and iron ore with rates on coal from various places in Indiana and other States, most of which comparisons were not considered by the commission on the ground that the conditions were not the same. The order found that the railroad companies compared the rate of $1.13 with rates from the same distance under the Illinois maximum scale; that this scale is seldom applied between points in the State of Illinois, and that it was made higher than it would otherwise have been made had it not been that the commission desired, at the urgent request of the coal operators and railroads, to avoid disturbing the present method of grouping mines and applying a common rate from the entire group to common destinations, and that very little coal traffic moves under the distance scale rates. The order found that the rate of $1.13 had been since January 18, 1923, is now, and for the future will be, unjust and unreasonable to the extent that it exceeded certain rates therein specified. The order specified new rates from certain points as above stated at the rate of 90 cents per ton and from other points at the rate of one dollar per ton and directed that schedules be filed therefor.

The burden of proof was upon the petitioners to show that the rate is unreasonable. (*Public Utilities Com.* v. *Atchison, Topeka and Santa Fe Railway Co.* 278 Ill. 58; *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 320 id. 214; *Commerce Com.* v. *Illinois Traction,* 335 id. 247.) The order cannot be sustained upon findings comparing the percentage of increase of the

rates complained of with the percentage of increase of rates generally. Such comparison is not a proper foundation for an order fixing a rate, because the order must be based upon what rate is reasonable at the present time. A mere difference of percentage of increase or decrease of rates is not of itself evidence that any rate is too high or too low or is unjustly discriminatory. (*Atchison, Topeka and Santa Fe Railway Co. v. Commerce Com.* 335 Ill. 624; *Commerce Com.* v. *Illinois Traction, supra; Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co. supra.*) Nor can the order be sustained upon mere findings making comparison between the rates attacked and the rates and ton-mile earnings elsewhere. Comparisons of existing charges and ton-mile earnings constitute proper elements for consideration in determining what are reasonable rates, with the qualification that the rates and the ton-mile earnings are under similar conditions of operation. To afford a sufficient basis for comparison there must be findings of fact showing such similar conditions of operation as well as findings as to the distances and rates. *Alton and Southern Railroad* v. *Commerce Com.* 316 Ill. 625.

The two principal witnesses who testified for the petitioners with reference to the unreasonableness of the $1.13 rate were Ray Williams, traffic manager of the Cairo Chamber of Commerce, and W. Y. Wildman, for the Illinois Coal Operators Traffic Bureau. The former witness testified on cross-examination that he had no knowledge of the movement of the compared commodities. The latter witness offered additional comparisons, but they were not of much value for the reason that the witness had little knowledge of the circumstances and conditions surrounding the compared rates. The evidence consists largely of comparisons showing that certain rates on coal in other districts were lower, or that rates on other commodities, such as sand, gravel, crushed stone and iron ore, which are not competitive with coal, were lower. The evidence does not

show that the compared rates furnished a proper standard for measuring the coal rate here involved or that the conditions are the same, without which showing this court has held that rate comparisons are without probative force.

One of the allegations of the complaint is that the petitioners are unduly prejudiced by the rate to East St. Louis. The charge is that the rate of $1.13 from the mines in southern Illinois to Cairo cannot come in competition with the rate of 99 cents from southern Illinois to East St. Louis, which, it is alleged, hinders the industrial growth of Cairo and other destinations involved. The evidence on this point not only demonstrates the fallacy of this contention but also demonstrates the fact that the other comparisons herein made are of very little force and effect. The evidence shows that a spur of the Ozark mountains extends across the State between the mines in question and Cairo, resulting in heavy grades and severe curves. The evidence on behalf of the railroads shows how numerous and severe are the grades and how many and sharp are the curves, making it necessary to maintain a pusher service in each direction, resulting in a reduction in engine ratings in this region. One witness testified that the cost of operation southward from West Frankfort was from one-third to one-half more than the movement northward. The evidence shows that these conditions do not exist between the mines of southern Illinois and East St. Louis, and therefore the hauling of coal to East St. Louis is much less expensive than it is to Cairo, and yet the order places both rates on practically an equal footing. Attempts were made to explain some of these comparisons by findings of the Interstate Commerce Commission, made a number of years ago, that conditions in the State of Indiana as a whole are not dissimilar to those in the State of Illinois and that rates in the South are lower than rates in the North because of differences in transportation conditions. These findings are of very little value, because the evidence shows what the actual conditions are

and that there is a marked distinction between different territories and different rates.

The evidence on behalf of the railroads shows that the rate of $1.13 had for its basis an order of the Interstate Commerce Commission and that it is the result of a reduction voluntarily made by the carriers; that the rate is materially lower than the Illinois maximum distance scale rate prescribed by the commission under section 12 of article 11 of the constitution and section 32 of the act establishing the Railroad and Warehouse Commission, as amended in 1911, (Laws of 1911, p. 480,) and that comparisons with rates on coal between points where conditions are the same are more favorable than those surrounding the movement from southern Illinois mines to Cairo.

In its review of the commission's order this court is limited to a determination of whether the commission acted within the scope of its authority, whether the order has substantial foundation in the evidence, and whether any substantial right has been infringed by the order. (*Central Business Men's Ass'n* v. *Commerce Com.* 337 Ill. 149; *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 id. 412.) The order in this case is without substantial foundation in the evidence.

The judgment is reversed and the cause remanded to the circuit court, with directions to set aside the order of the Commerce Commission and to remand the cause for further consideration by the commission in accordance with the views herein expressed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*