(No. 26768.—

THE ALTON RAILROAD COMPANY *et al.*, Appellees, *vs.* THE
ILLINOIS COMMERCE COMMISSION *et al.*—(THE NEW
YORK CENTRAL RAILROAD COMPANY, Appellant.)

*Opinion filed March 16, 1943—Rehearing denied May 13, 1943.*

D. P. CONNELL, and LEO P. DAY, for appellant.

WINSTON, STRAWN & SHAW, and BRACKEN, LIVINGS-TON & MURPHY, (SILAS H. STRAWN, JOHN C. SLADE, W. K. BRACKEN, and BRYCE L. HAMILTON, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Bloomington Association of Commerce, a voluntary association, and Union Gas & Electric Company, filed a complaint before the Illinois Commerce Commission against the New York Central Railroad Company charging in effect that the latter had so changed the extent of its switching district in the city of Bloomington as to deprive certain industries of the benefit of reasonable switching rates, the effect of which was to substitute a line-haul rate, which so operated as to make the charges unlawful, unreasonable and discriminatory. The Alton Railroad Company and Funk Brothers Seed Company later intervened in the proceedings. The cause was heard upon the second amended complaint, which prayed said switching district be restored to its original size, or that reasonable switching charges be put into effect by the commission.

The facts are substantially as follows: The New York Central Railroad Company is a common carrier whose line runs easterly and westerly through the city of Bloomington and intersects the Alton railroad, the Illinois Central and the Illinois Terminal railroads, which run in a northerly and southerly direction, and also connects with the Nickel Plate railroad, which runs in an easterly and westerly direction. The Alton railroad traverses the westerly part of the city. The New York Central station is located about four thousand feet east of the Alton tracks. The Union Gas & Electric Company is located west of the Alton tracks on a switch that connects with the New York Central.

Prior to August 1, 1933, all of the industries along appellant's track in the city of Bloomington, both east and west of the Alton railroad, were subject to a published switching rate of 13 cents per ton, with a minimum of $2.70 per car to a maximum of $4.95 per car. The effect of the change made by the switching tariff published August 1, 1933, was to make the Bloomington switching district constitute that part of the city east of the Alton tracks. The part of the city west of the Alton tracks was excluded from the Bloomington switching district, which would require industries located on the connecting-line railroads traversing the west part of the city of Bloomington to pay, for the delivery of cars, the higher through-route rate instead of said switching charge.

Some of the railroads entered into a joint schedule of rates with the New York Central to overcome this situation, but the Alton refused to do so. Industries west of the Alton tracks, for the delivery of freight from or to them, were required to pay for haulage as though on a main track, which in the case of coal amounted to 67 cents per ton, and for other freight from 6 cents to 30 cents per hundred weight. This arrangement was perfected by designating the west part of the city of Bloomington as a nonagency station called Costin, which was nothing but a

passing track. There is no agent or station building at this point, and the billing is handled by the agent at Bloomington. Where specific rates are named to and from Costin they are the same rates as applied to and from Bloomington.

The Alton, which is an intervenor in this proceeding, refused to join in a schedule of joint rates for industries to the west of its tracks because the New York Central demanded a division in the case of coal of 40 cents per ton, in lieu of the switching charge of 13 cents per ton, with the minimum and maximum above specified. The reason assigned by the New York Central for making the change is that the Union Gas & Electric Company was having a larger proportion of its freight hauled into and out of the plant by other carriers, and since its principal freight was coal the charge of 67 cents per ton for line haul, brought about by the change in the switching district, made it prohibitive for the gas company to purchase coal from mines located on any other line than the New York Central.

On July 28, 1939, the commission entered an order requiring the New York Central to re-establish its switching limits as they had existed prior to August 1, 1933, and denied the petition to fix reasonable switching charges because of insufficient evidence. The commission based its order and findings upon the proposition that the failure of common carriers to agree upon a division of charges furnished no justification for cancelling what had before that time been in effect, and thus impose unreasonable charges upon through traffic. Upon motion a rehearing was granted by the commission, and on November 8, 1940, a new order was made in which the order entered on July 28, 1939, was annulled and set aside, and the complaint dismissed because the commission found that the exclusion of the industries west of the Alton track in the city of Bloomington from the reciprocal switching district had not been shown to be unlawful. On appeal to the circuit court of McLean county the order of the commission was set aside.

Bloomington has a population of 30,930. There are sixty-five industries served by railroads within and immediately adjacent to the corporate limits. There are fifteen industries located on appellant's line within the limits of the city; eleven of them are in the new switching district, and four of them outside. Those outside include the Union Gas & Electric Company, the Sinclair Refining Company, the Benjamin Coal Company, and the Funk Brothers Seed Company. Freight coming to any of these four industries by another carrier is charged at the additional rate created by the limitation of the switching district. The corporate limits of the city of Bloomington are about 1500 feet west of the Alton tracks; the gas company plant is about 400 feet west of said tracks, and the other industries from 500 to 800 feet west. On the east side of the tracks the switching district extends a mile and a quarter eastward. The extent of the switching territory from the passenger station, shown in other comparable cities in Illinois, was from 4500 feet to six miles. The switching charges in all of these cities ran from a minimum of $2.70 to $3.15, where the switch haul was over six miles in length. In nine out of ten of the locations, other than Bloomington, the switching distance was greater than any in that city, west of the Alton tracks. And the evidence shows that, so far as known, there is only one other city in the United States where a part thereof has been excluded from the switching district.

The question presented upon this record is whether the rate or charge brought about by the limitation of the swiching district in the city of Bloomington, as to the petitioners, was just and reasonable. While appellant claims that the exclusion of a part of the city west of the Alton tracks from its shipping district, and the creation of a new station by the name of Costin, was necessary in order to get a greater share of the gas company's business, and that the industries to the west of the tracks would suffer discrim-

ination if the Alton would join in the joint-traffic rate, still the real question for determination is whether the industries to the west of the Alton tracks, by the elimination therefrom of the switching districts, may be required to pay on the basis of through-haul rates instead of switching charges fixed as reasonable by the commission, and thus be excluded from doing business with other railroads, or, in the alternative, pay a prohibitive rate for the privilege.

The essential facts found by the commission in the case are not in dispute, but it is claimed by appellant that the circuit court erred in reaching a different conclusion on such facts than did the commission. In reviewing the order of the commission this court is limited to a determination as to whether the commission acted within the scope of its authority, whether the order has substantial foundation in the evidence, and whether any substantial right has been infringed by the order. *Chicago and Eastern Illinois Railway Co.* v. *Commerce Com. ex rel. Cairo Association of Commerce,* 343 Ill. 117; *Commerce Com. ex rel. Lumaghi Coal Co.* v. *Chicago and Eastern Illinois Railway Co.* 332 id. 243; *Public Utilities Com. ex rel. City of Springfield,* v. *Springfield Gas Co.* 291 id. 209.

The legislature has no authority to declare what weight shall be given evidence, or what shall constitute conclusive evidence on an issue of fact, (*Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146,) and the order and finding of the commission shall not be approved as reasonable if the reviewing court determines judicially on the same fact that it is not reasonable. (*Lowden* v. *Commerce Com.* 376 Ill. 225.) From these authorities it may be seen that if the facts are not in substantial dispute their effect, under the Public Utilities Act, becomes a matter of law, upon which the court, upon review, may reach an independent conclusion.

Appellants claims the circuit court was without power on appeal to hold the practice shown in this case to be

unreasonable or unlawful, contrary to the finding of the commission, but the cases cited do not sustain this position. *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 374 Ill. 60, did not involve a rate practice, but decided that a court could not sustain in part and overrule in part the order of the commission in the face of a statute requiring the order to be affirmed or reversed. But in the same case it is also said: "If the order of the commission is lawful and reasonable, it must be confirmed, if it is not, it must be set aside." *South Chicago Coal Co.* v. *Commerce Com.* 365 Ill. 218, involved a technical question relative to a demand power rate, upon which there was a great diversity of expert opinion, and in that case, while we held that the evidence to support the order of the commission will not be set aside unless it is clearly against the manifest weight of the evidence, we, in the same case, said its order might be set aside if it was arbitrary, unreasonable, or in clear violation of a rule of law. The case of *Commerce Com. ex rel. Lumaghi Coal Co.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243, announces substantially the same principle as the last case, but also held that an order might be set aside if not resting upon a reasonable basis for the exercise of the discretionary powers of the commission.

Many, if not most of the cases, coming on appeal to the courts from the orders of the Commerce Commission are upon disputed questions of fact or rate questions, or other matters of a technical nature where the commission is in a much better position than a reviewing court to judge the weight and effect of the evidence, but where, as here, there is no substantial dispute as to the facts, the finding of the Commerce Commission that the practice is unreasonable or unlawful does not, under the authorities, require us to reach the same conclusion, if, from our independent judgment and the application of legal or equitable principles, we determine otherwise.

Section 32 of the Public Utilities Act, (Ill. Rev. Stat. 1941, chap. 111⅔, par. 32,) provides: "All rules and regulations made by a public utility affecting or pertaining to its charges or service to the public shall be just and reasonable." Section 45 provides: "The Commission shall likewise have the power to require one railroad company to switch to private spurs and industrial tracks upon its own railroad the cars of a connecting railroad company and to prescribe the terms and compensation for such service." Section 52 provides: "The Commission shall have power to fix and establish * * * reasonable switching rules and regulations, and to establish reasonable limits for said switching and reasonable rates therefor."

The undisputed facts in this case show that a part of the city of Bloomington, which theretofore had been one switching district, was eliminated from the benefit of a switching charge of 13 cents per ton, and thereby the railroad traffic therein became subject to the line-haul rate, which was much higher. The rate to be charged for switching services was fixed by the order of the commission several years ago, and was State-wide and applied to all railroads. And the facts also show that in practically all instances the switching limits included the whole territorial extent of a city. The practical effect, taking coal as an illustration, of the practice put into effect by appellant was to require a charge of 67 cents per ton for moving coal from a connecting carrier, where before that time it had been 13 cents per ton, with a minimum of $2.70 for a car, and a maximum of $4.95. As far as appellee Union Gas & Electric Company was concerned it required the payment of 67 cents to move a ton of coal, where before the installation of the rate it cost 13 cents per ton to move such coal. Naturally the effect was to limit its coal haulage to the line of appellant, as such an additional charge prohibited it from purchasing coal from mines located on a connecting carrier.

The commission in its report assumes the gas company was not interested in obtaining coal from other sources than mines upon the line of appellant, but the evidence shows it would be useless to do so, because of the prohibitive cost brought about by this practice. The Public Utilities Act was enacted not alone for the benefit of carriers, but for the public also. (*Commerce Com.* v. *Chicago and Eastern Illinois Railway Co. supra.*) The facts that the appellant and the Alton Railroad were unable to agree upon revenue on the joint haul and that the gas company was purchasing coal coming in on other lines, do not in themselves constitute justification for the application of an unreasonable practice.

In *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co. supra,* rates for hauling coal were based upon a group system, which resulted in one railroad company being required to charge $1.85 a ton for a certain haul, when another railroad some three miles further distant from the market was required to charge only $1.65 per ton, and this was attempted to be justified because the complaining railroad was serving a mine which did not come within the favored group. An order requiring equal rates to be installed was approved by this court.

In *State Public Utilities Com.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 287 Ill. 412, a tariff was posted by the utility requiring a shipper to pay freight charges for the haulage of brick, based upon a minimum weight which was greater than the load that could be carried by the freight car. This was upheld by the commission, but its order was overruled by this court, as being not based upon law or logic and as an unreasonable exercise of its powers. If the practice in the case before us were approved it would be possible for any utility, by merely changing territorial limits of its switching district, to void the orders of the commission in fixing switching charges, and in effect make line-

haul rates prevail where it is clearly contemplated that switching charges should prevail.

There is some evidence in this case showing that the switching connection with the utility is of sharp curvature, and that cars are placed upon it with difficulty and possibly some additional expense, but the real difficulty in this case seems to be the inability of the two railroads, parties to this lawsuit, to reach an amicable agreement. This cannot be made the ground or basis of charging one customer 67 cents per ton for switching charges, while a customer on the opposite side of the connecting track would pay 13 cents per ton. It is unreasonable and arbitrary, and the commission erred in holding otherwise.

It is to be observed that in its first opinion the commission did hold the practice was unreasonable, but in its second opinion it says nothing as to whether it was reasonable, but merely holds it was not unlawful. Doubtless the commission overlooked the fact that section 32 of the Public Utilities Act provides: "Every unjust or unreasonable charge made, demanded or received for such product or commodity or service is hereby prohibited and declared unlawful." And it might further be observed that the mere fact that the utilities in this case are unable to agree, or unwilling to make application to the commission, does not prevent a solution of the reasonable charges or joint-rate charges in the city of Bloomington, for the statute provides that "Complaint may be made by the Commission, of its own motion, * * * setting forth any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of this Act, or of any order or rule of the Commission. * * *" Chap. 111⅔, par. 68, sec. 64.

Appellant cites many cases to the effect that a court may not substitute its judgment for that of the commission as to the propriety of rates and charges, rules and regulations; and that the court may not, under the guise of exercising

488

judicial power, usurp purely administrative functions of the Commerce Commission. The cases cited in no wise conflict with what we have said above, as in most of the cases the order of the commission was questioned as being unwise or inexpedient, or not good judgment either upon questions of service, rates, issuing certificates of convenience and necessity, or as being against the manifest weight of the evidence. While recognizing the principle claimed by appellant, these cases also hold orders of the commission may be set aside if arbitrary or unreasonable. (*Commerce Com. ex rel. Illinois Traction, Inc.,* v. *Omphghent Township,* 326 Ill. 65; *Indiana Harbor Belt Railroad Co.* v. *Commerce Com. ex rel. National Stone Co.* 340 id. 304; *Chicago North Shore and Milwaukee Railroad Co.* v. *Commerce Com. ex rel. Dept. of Public Works,* 354 id. 58; *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co. supra.*) Many other propositions of law are argued, and have been duly considered by the court, but do not affect the conclusion we have reached.

We are of the opinion that the order of the Commerce Commission in upholding the action of appellant was erroneous, and that the practice was unreasonable and unlawful, and consequently should be set aside. The judgment of the circuit court of McLean county in setting aside the order of the commission is accordingly affirmed.

*Judgment affirmed.*