(No. 32713.—

Guy A. Thompson, Trustee, Missouri Pacific Railroad Co., Appellee, *vs.* Illinois Commerce Commission, Appellant.

*Opinion filed November 18, 1953.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, MILTON MALLIN, HAROLD BOWMAN, and SHELDON STEIN, of counsel,) for appellant.

WALKER & WILLIAMS, of East St. Louis, (HAROLD L. HARVEY, and T. T. RAILEY, both of St. Louis, Mo., of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Randolph County which set aside an order of the Illinois Commerce Commission dated May 16, 1952, denying the petitioner, Guy A. Thompson, Trustee, Missouri Pacific Railroad Company, the authority to discontinue the operation of two passenger trains between Menard and Mt. Vernon, Illinois, and remanding the cause to the commission with directions to grant the petition.

The commission on behalf of the public served by the trains has taken this appeal. There is very little conflict in the factual situation both as to the use of the trains by the public and as to the out-of-pocket loss to the railroad by the operation of the trains in question.

The trains in question are trains numbered on said railroad as 832 and 831. These are not passenger trains in the accepted sense, but consist of rural suburban units of single gas electric motorcars of considerable age containing power plant, passenger accommodations, and some room for small freight. Train number 832 travels west from Mt. Vernon to Menard every morning and train number 831 makes the return trip every afternoon. The route of these trains is approximately 64 miles, and covers a mining and agricultural section, serving three county seats, as well as industries and the State penitentiary at Menard. Twenty-seven thousand people are shown to live in the area through which the railroad runs, but many of the areas are farm areas. The record discloses that the trains in question afford the only railroad passenger service for these areas.

Considerable public opposition appeared to the petition for discontinuance. One hundred twenty-seven persons appeared at the hearing held on said petition on July 28, 1950. Half of them appeared as witnesses against the granting of said petition and there was presented a resolution of opposition from the city councils of Chester, Pinckneyville and Mt. Vernon. The chambers of commerce of Steeleville and Chester, and the village board of Tamaroa were introduced, and several witnesses appeared from these communities all in opposition to the petition.

The record discloses that the trains in question are used for small freight shipments, merchandise, as well as cream and chickens, and also that they carry mail and parcel post. In contemplation of the discontinuance of the trains, the petitioner has instituted a truck service to serve the shipping and express needs of the communities. Some criticism of

this service appears in the record on the grounds that the same operates during the night and early morning hours and not at the time of railroad operation, and as a consequence inconvenience results. The Commerce Commission made no finding as to the adequacy or inadequacy of this service, and based its order of denial of the petition entirely upon an alleged need for passenger service transportation.

The principal question to be determined is whether the order of the commission finding the public convenience and necessity required the continued operation of these trains is against the manifest weight of the evidence. This court, in *Illinois Central Railroad Co.* v. *Commerce Com.* 410 Ill. 77, held that there were three factors that should be considered in determining this question, (1) the cost of providing the service, (2) the use made by the public of the service, and (3) the availability and adequacy of other transportation facilities.

There is practically no dispute in the record as to the figures regarding the cost of providing service, and same is incorporated in the commission's findings.

In 1945 the out-of-pocket loss for the train operations of these two trains was $7757. In 1949 this had increased to $14,984, and in 1951 it had reached the sum of $20,436. The total expense in 1946 was $17,759 and in 1951 it had reached the sum of $29,167. The passenger revenue was $2041.93 in 1950 and in 1951 it amounted to the sum of $1511.40. The trains require a three-man crew, and the wages for the month of December amounted to $1157. The total gross passenger, mail, express and baggage revenues for the year amount to only $8731.

The second factor to be considered, according to the *Illinois Central case,* is as to the use of the service provided by the trains for the public. The best evidence, of course, as to whether there is a public necessity for the continuation of the trains is the extent to which the public makes use of them. The record discloses that in 1947,

9803 persons used both trains, in 1948, 8261, in 1949, 5072, and in 1951, the last available year for which statistics were gathered for the purpose of this case, the number was 4598. It is apparent that beginning with the year 1947 and including the year 1951 there was a decrease of 50 percent in the number of passengers who made use of the service provided by the trains. Inasmuch as each of these trains in question was operated every day in the year, except Sundays, each train would average only about 7 passengers getting on and off the train daily.

The record further discloses that the passenger revenue received during the year 1951 was $1511.40 and that the average fare paid by each was 32.8 cents and the average distance traveled per passenger was only 13.8 miles. The commission's findings indicate there are 27,125 inhabitants in just the incorporated areas served by the trains in question, and therefore only 34 percent of 1 percent of the population of the area in the incorporated towns used the accommodations of the trains during 1951. During the month of December, 1951, the average passenger per train mile was 1.27, with passenger revenue from both trains in the amount of $98. In determining the existence of public necessity or convenience the controlling interest to be considered is the public interest, and the convenience and necessity required to support an order of the commission and that of the public rather than the interest or convenience of some few individuals. *Roy* v. *Commerce Com. ex rel. North Shore Connecting Railroad,* 322 Ill. 452; *Illinois Central Railroad Co.* v. *Commerce Com.* 410 Ill. 77.

The third factor as set forth in the *Illinois Central case* is the availability and adequacy of other transportation facilities in the event the operation of the trains was discontinued. The commission contends by its finding that there is no direct highway parallel to the route of the railroad and therefore there can be no other comparable adequate public passenger service available by rail or bus to

the residents of the communities. To this the petitioner replies that direct service is not required where public convenience and necessity is being adequately serviced through the use of transfer or connecting transportation facilities. *Gulf Transport Co.* v. *Commerce Com.* 402 Ill. 11.

An examination, however, of the bus service if it is available discloses as follows: In finding 18 of the commission it is recited that it takes almost 2½ hours to travel from Chester to Mt. Vernon by rail while by bus it requires 7 hours and 22 minutes one way and 5 hours and 53 minutes in returning. In this connection, however, it is also shown that during the month of December, 1951, only 4 passengers traveled on Train No. 831 from Chester to Mt. Vernon and only 9 persons traveled on Train No. 832 between these points. During the last six months of 1951, being the last period during which testimony was introduced in this proceeding, only 40 persons traveled on train No. 832 from Chester to Mt. Vernon, and only 42 persons used No. 831 in returning.

Finding 18 of the commission also shows that it is possible to travel from Pinckneyville to Steeleville in 34 minutes by rail while 3 hours and 53 minutes is required to make the return trip by bus.

In this connection, however, it appears that during the month of December, 1951, only one passenger rode Train No. 831 from Steeleville to Pinckneyville and only 3 rode train No. 832 on the return trip, and that during the last six months of 1951 only 17 passengers used the train in going and only 17 in returning.

It is now our duty, in the light of the foregoing evidence on these factors set forth in the *Illinois Central case,* to determine whether the order of the Commerce Commission denying discontinuance of the running of trains in question was an erroneous conclusion. In the case of *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 397 Ill. 406, at 413, this court used the following

language: "The purpose of judicial review of an order of the commission is to determine the reasonableness and lawfulness of the order. [Citations] The facts found may be re-examined, in connection with the evidence, to ascertain if they support the findings, but this court, to sustain the order, will not enter upon an independent investigation of the evidence to develop new facts not found by the commission. [Citations] " There is very little dispute in the facts in this case, and the case does not involve questions of rate or matters of a technical nature where the commission is often in a much better position than a reviewing court to judge the weight and effect of the evidence. Therefore, the finding of the commission that the discontinuation of the trains would be unreasonable does not require this court to reach the same conclusion, if in our judgment and the application of legal or equitable principles we should deem otherwise. (*Alton Railroad Co.* v. *Commerce Com.* 382 Ill. 478.) It is also equally true that the findings of the commission are only *prima facie* evidence that its orders are reasonable, but we are not obliged to believe that the facts in evidence establish a given conclusion if the conclusion is not reasonable. *Lowden* v. *Commerce Com.* 376 Ill. 225.

It is readily apparent from the undisputed facts in this record that the cost of operating the trains has resulted, and will probably continue to result, in a substantial loss to the railroad. The out-of-pocket cost which was shown in December, 1951, to be in excess of $20,000 is conclusive proof of this fact. The commission, however, wrongfully contends that these facts were not in themselves sufficient to warrant the court in setting aside the order of the commission where there is evidence of public convenience and necessity. In discussing this problem this court, in the *Illinois Central case,* used the following language: "Today, on the other hand, railroads are in competition with bus and truck lines as well as private automobiles traveling over a

vast system of improved highways built, not by private capital as is the case with rail carriers, but by public expenditures. They are in competition also with government subsidized waterways and, in recent years, with the expanding activities of air lines. In the light of such changed conditions it is a duty of the carrier to seek, and of the regulatory agency to permit, elimination of uneconomic services no longer needed or used by the public to any substantial extent."

A review of the evidence concerning public necessity and convenience discloses that the use of the two trains in question has been steadily declining for the five years ending with and including the year 1951. While some evidence in the record was introduced to the effect that equipment on the trains in question was obsolete and not in the best condition, and that improvement of that equipment might result in increased patronage, yet none of it is of a convincing nature, and no reasonable conclusion can be deduced therefrom. The appellee contends that the use of the railroad has long since been abandoned by the public, and while, of course, some few individuals might be inconvenienced, the public at large would suffer very little, if any. Certainly, it cannot be denied that the record does indicate that the portion of the public that is presently utilizing the facilities of the road represents a very small segment of the population which the railroad would ordinarily serve. In reply to this conclusion, the appellant states that in the event of the discontinuance of said trains there is no alternate transportation available. While there is evidence in the record that the bus transportation facilities do result in some inconvenience, yet, as we have said before, because of the small number who are presently using the facilities of the trains, we cannot conclude that in order to serve this small number of persons it is necessary that alternate transportation be required. We are familiar with many older cases which state, as this court states in the *Illinois Central*

*case,* that there are very few if any cases where this court has approved the discontinuance of service where there is no proof of adequate alternate transportation service. However, that rule applied to those cases where the evidence disclosed a public necessity and convenience requiring service, rather than the accommodation of only a few persons as in the instant case. In addition to the evidence of bus service, which we have heretofore stated is somewhat unsatisfactory, there is evidence in this record that there are a great many automobile owners throughout the territory served by this railroad. In fact, the per capita ownership of automobiles in this territory was shown to be somewhat above the national average.

It is common knowledge that travel for short distances is now generally by automobile and truck, and the kind of local train service which some years ago was almost a necessity is no longer required. We are of the opinion that the trial court was justified in setting aside the finding of the commission that in this case the public convenience and necessity required the continuance of trains 831 and 832 for passenger service.

The order of the circuit court of Randolph County on review set aside the order of the Illinois Commerce Commission, and remanded the cause to the commission with directions to grant the prayer of the petition, and authorize the discontinuance of passenger trains 831 and 832. The circuit court, upon an appeal from an order of the commission, exercises a statutory, not a general appellate jurisdiction, and is restricted in the exercise of its powers, including the orders it may enter, to those expressly delegated. The only issue presented is the reasonableness and lawfulness of the commission's order, upon which issue the court's inquiry is confined to the jurisdiction of the commission, the sufficiency of the evidence, and the preservation of constitutional rights. If the order of the commission is lawful and reasonable, it must be confirmed, if it is not, it must

be set aside. (*Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 374 Ill. 60.) Having determined that the order was unlawful and unreasonable, the circuit court could only set it aside. That court could not remand the cause to the Commerce Commission directing the entry of an order granting the petition.

It is, therefore, the judgment of this court that the order of the circuit court of Randolph County be affirmed in so far as it sets aside the order of the Commerce Commission, and that that part of its order be reversed which remands the cause to the commission and directs that the prayer of the petition be granted.

*Affirmed in part, reversed in part.*